And that leads us to our final case this morning, number 231140, in Re California Expanded Metal Products. Okay, Mr. Trojan. Please, the court. There are two issues on this appeal. The first is the denial of the request for the injunction, which I'd like to address first, and the second is setting aside the jury's damages award. For my edification, could you tell me whether there was a request for an ongoing royalty here? An ongoing royalty? No, there was not. There was not. There was not. And so... So for the period after the judgment that would be governed by the injunction, there was still a possibility of asking for an ongoing royalty? Correct. Right? Yeah. There were... Correct. Okay. So to understand the need for an injunction in this case, it's important... I never actually thought it was so important to go through the cast of characters in a particular case. So I suspect we appreciate that there is a group of human beings who have been forming related... I mean, separate companies producing goods that you think are infringing, that indeed have been adjudicated to infringe. And I took it that the point of your request for an injunction, whether it simply names... Is that the current name of the current defendant? Correct. Okay. Even if it didn't name other individuals, which maybe it could, maybe it couldn't, would cover those acting in concert, and those people then could be found in their new venture. And so that matters. Correct. And how it matters is that Mr. Sidrian Orzelak, who runs SteelTech, where all these things have been occurring, when they shut down Steel for Safety, they just transferred it to a new entity that Klein's running that's owned by his son and his wife now. And so all of the website, all of the ULs, all of the business then went to the new entities. Mr. Sidrian Orzelak, if they had been enjoined in this case as the agents of Steel for Safety, would have been enjoined from permitting, being able to transfer all those assets and inventory to another one of Klein's shell companies. Just as what might be a technical matter or might not, do you think that the district court, if it issued an injunction, could make the injunction itself extend to those individuals, or would it merely under Rule 65 be binding on them under the Rule 65? No, I believe it's binding upon them. They are the agent, they are the officers of Steel for Safety. But they couldn't be enjoined directly because they're not parties to the case, right? They're not parties to the case, but their action, they took the assets of the entity that was enjoined and transferred those assets to another entity that continued the injection. I'm not sure, I don't right now think it matters for purposes of why you have an interest in this, whether they're bound but not named or actually bound because they're named. But the district court didn't reject the injunction on this basis. That is, the district court didn't say, you don't need it. The district court said, if I remember right, correct me if I'm wrong, two things. You said the named defendant is penniless, so I won't be able to get any money. And second that, or not second, that was actually the second point. The first point was under this court's decision in active video, you don't have any irreparable harm. What harm you have will be reparable by money. So can you address that? But just to be clear about it, my understanding is that the penniless argument, if we could call it that, was not made to the district court because the information on which that was based didn't happen until after the judgment. Am I correct about that? We argued because the company had not been properly capitalized, capitalized with $100, and considering the history of these companies, there was no intention of honoring the judgment. And the court said, well, they've made a lot of money, so therefore I believe they will be able to pay. And then as soon as all of the judgments came down, then they closed the company and distributed the assets. Just if you're curious, we have collected on some asset $200,000 of accounts receivables that we've redirected so far. And also there's the judgment in Washington against Silk for Safety as well, $2.7 million, something like that, for the contempt of court. But to go to the question that you're asking, the particular case that the court was relying upon was a case where it was basically an entity, non-practicing entity, that licensed anyone who wanted a license. That's not the case here. We are in the industry, and we exclusively license one entity, Clark Dietrich. And that's why we've been fighting all these years to preserve Clark Dietrich's exclusivity. In the vision case, active vision case, there is absolutely no need to preserve exclusivity because no licensee has exclusivity. That is a fundamental difference. And the court instead focused on the fact that Simcoe itself doesn't practice the invention. But it does have an exclusive licensee, and the court said, well, the exclusive licensee needed to join the lawsuit because they're the ones that have the rights to the injunction because they're the practicing entity. We say that the case does not go that far. That case looked purely at a situation where there was a huge non-exclusive licensing base. So therefore, money damages make sense because this particular license works. Suppose we agreed with you that active video does not go as far as the district court's description reached, in part because there was no exclusive licensee there. Active video was licensing to Cablevision, which was the competitor to Verizon or whatever. I think it was Verizon by then. But active video was licensing to anybody who wanted to use their stuff. And therefore, it was in that circumstance that the conclusion of no sound basis for irreparable harm. Do we remand for exploration of the actual basis for irreparable harm that you have here? Because the district court didn't discuss anything else. What the basis for irreparable harm would be that would follow from your exclusive relationship with them? Right. So the irreparable harm is, as it's said in every case in which there is some sort of exclusivity, when you're talking about the patent's exclusivity, is you have a competitor in the market that's eroding the price. The testimony at trial was that Clark Dietrich sells the steel with the intumescent strips on it, and then the infringer is just selling intumescent strips with the instructions. Okay, but I think the question was, don't we have to send it back to the district court to make a factual determination as to whether those allegations support irreparable injury? I think that there's no other reasonable interpretation. I don't think the court could... I can understand why the court's thinking about, well, maybe there needs to be factual findings on that issue. But considering that those issues came out at trial and they're in the record, the court has a fully developed record on the issue. Well, it's pretty thin. You don't have the fact-finding authority. It's pretty thin also. It's just a one-page, one-and-a-half-page declaration saying these things. Well, I disagree because there was evidence in the trial itself before we had the bench trial, the jury trial, that was relevant, that we called upon. There's certainly relevant evidence in the jury trial that applied to it. And that was one of the reasons why we did not have live testimony during the bench trial. If this goes back, is there going to be anybody else on the other side of the courtroom from you? Or do you not know the answer to that? No. The Seal for Safety, as far as they're concerned, they have officially closed in Washington. And so the only thing they're doing is defending collection actions. And they've terminated their counsel. Their counsel is withdrawn from this particular case in the district court. That motion was granted for them to withdraw, so they have no formal representation. So the reality is it would be quite one-sided. Could I, unless Judge Serrano or Judge Mayer have any questions on the injunction question, could I move you to the reasonable loyalty? Correct. Because here, why are you entitled to more than nominal damages given the lack of evidence as to what a reasonable royalty would be? There's evidence about profits, yes. But once you assume that the expert report was excluded, properly excluded, there's no evidence of what the percentage would be under these circumstances for a royalty. Right. Well, that gets to a fundamental issue of due process. It wasn't an expert that was excluded. It was a royalty licensing agreement with Mr. Klein. Okay, but you devote only part of one sentence in your brief to arguing that that was error. And so it seems to me that you haven't really argued the propriety of the exclusion. So I think we have to look at this record on the assumption the exclusion was proper, and there's nothing there about a royalty agreement. I have to disagree with that because there was twice before they tried to exclude, before the trial started. No, no, but you didn't argue it in the brief. You just gave one sentence. Certainly, going and pointing out that we were relying upon the 20% rate and that in the middle of the… Well, let's assume for the moment that the other royalty agreement was properly excluded, and that's not an issue before us. Is it not the case that there's no evidence to support what a reasonable royalty would be? There's evidence about a base, but there's no evidence about what a percentage would be. No, there's the evidence about the base. There's the evidence about the profit margins of 43%. But that's the base. Well, I would interpret the base as being the number of sales as opposed to profit. Okay, but what percentage of the profits? I mean, there's no evidence as to what the percentage should be. Because that's in the black box of the jury. I thought you had evidence that the defendants were making about 40% of the profit. 43%. And in the absence of anything else, I guess I understood at root your position would be there is evidence that the defendants' profits, which is a perfectly common form of evidence, whether you're doing the hypothetical negotiation or the so-called analytical method, and let's share it equally. You basically get to your 20%. Simply. But what's the evidence that it should be shared equally? Well, because then we had evidence of the success of the product in the marketplace, the relationship of the parties, which are factors. They're direct competitors. They're selling to the same markets. There was plenty of evidence of the fact that they're attempting to sell to the same construction jobs. What's the evidence that it should be shared equally? That there's such a tradition in the industry or prior royalties? There isn't any of that evidence, right? There's no evidence of what the reasonable royalty is. There's no standard in the industry that's presented. And in reality, those kinds of numbers are rarely available because most licensing agreements are private agreements. So having something like that available to you is rarely available to you. And that's why it's important for after the jury heard all the testimony and knew the percentage and knew the rates, that they came up with their own determination of what that reasonable royalty was. And it wasn't proper for the court to absorb that and to come to a different conclusion about it because, in fact, the 12% royalty is objectively a reasonable royalty rate for such a successful product in which someone's making 43% profit on. There's nothing objectively unreasonable about what the jury did. And what their reasoning was behind that is not something that the district court had the right to explore. But that's sort of suggesting that in any case in which there's no testimony about what the percentage royalty should be, that the jury can speculate about it. Well, I don't think that's speculation. That's actually their function. Can I just ask that there was either evidence or an argument from the other side about 3%, if I remember right? The district court referred to the number 3%. What kind of evidence was there about the royalty from the other side? They did not have a basis for that in the sense of having any kind of licensing agreement. They didn't suggest in the closing argument 3% was right. By recollection of the closing arguments, what they said is that wouldn't mean that you could even do 3%. Right. That was just the lawyers. Yeah, correct. Okay, unless there are further questions, thank you. Thank you. Case is submitted.